Grant v. Grant.

JAMES A. GRANT .

v.

ANNIE M. GRANT.

1. A petitioner asking for divorce, on the ground of desertion, will not be entitled to a decree if it appears that at any time during the continuance of the statutory period he consents to the desertion.

2. If the separation was caused by the cruelty of the husband, inflicted not in the exercise of any marital right, such cruelty is a continuing bar.

3. If it appears in such case that during the separation his affections have been given to another, this is also a bar.

In this case, the petition is filed by the husband for divorce.

*Mr. C. A. Skillman*, for petitioner.

*Mr. C. Winfield*, for defendant.

BIRD, V. C.

The parties were married August 30th, 1870. The husband alleges desertion on the part of the wife; the wife answers, and charges the husband with cruelty towards her and with adultery. The husband insists that the desertion complained of began in 1875. The wife admits that there was a separation then, but urges that it was agreed upon between her and her husband. It is conceded that articles of separation were prepared by the husband, and by him offered to the wife with a request that she should sign them, which she refused to do. But, says the husband, notwithstanding a separation followed, which he consented to at the time, he withdrew his consent and so informed his wife by letter. In this letter he says:

"DEAR WIFE:

"I would love to see you and talk with you, for I have done wrong toward you a great many times. I cannot explain why I did do it, but suffice to say I did do it, but if well-doing in the future can atone for my past misconduct,

Grant *v.* Grant.

I will be heartily glad to have an opportunity to do it. Oh, how many times since you and I met have I regretted my harshness towards you. God alone only can tell. Dear Annie, do not think this is all chaff and nonsense, and no sooner said than broken, for, believe me, I have often pictured you in my mind's eye as a dear devoted wife, if I had encouraged you and done my duty towards you. Annie, my unjust censures of you have been atoned for, if my heart is an indication of right and wrong, for it has nothing but the kindliest feeling for you. I do really love you with an undivided heart. I am aware I have committed indiscretions, but I hope they are forgiven if not forgotten."

He also expresses a desire in this letter that they " shall resume their old relations as husband and wife."

The defendant relies on these expressions in this letter, in corroboration of her own evidence respecting her husband's cruelty. She swears that he punched her, struck her, choked her, dragged her across the room in violence, pursued her with a butcher knife, attempted to smother her with a pillow, threatened that he would make it hot for her, and that she caught him in the act of adultery. The striking, choking, dragging, threatening and the adultery he denies ; the knife and pillow scenes he says were in fun. I think the expressions used in the foregoing letter are evidence of very great " misconduct " and " harshness." So far as is necessary, this letter very emphatically sustains the allegations of the defendant. It would be quite difficult to conceive of more convincing testimony. It was contended on the argument that the husband purposely discolored or distorted the case against himself, believing that by so doing the wife would the more easily become reconciled. It is incredible that such accusations should originate in trifles. Such language is the expression of a bitter experience. Such self-inculpations arise from a conviction of guilt. It certainly was not necessary for the wife to offer other proof in her own behalf.

But it is claimed that the husband repented. I will not discuss the obligations of the wife to the husband who confesses his cruelty, and seeks reconciliation. Whether it is her duty to try again, I will not decide. Suffice it to say that the statute makes cruelty a ground of divorce. When are confession and an expression of sorrow sure grounds of restoration to confidence and

Grant *v.* Grant.

to conjugal rights? If so, transgression never need fear punish-
ment, and the injured will appeal to the law in vain.

But, supposing cruelty can be atoned for, I do not think the
husband has done all that is required of him. It was not
enough for him to write such a letter. It was not enough for
him to express a willingness to close the breach between them
once more, and then, because his offer was not entertained, with-
draw all negotiations and thenceforward to treat his wife as hos-
tile. It was his duty at all times to be ready to receive her. It
was his plain duty on every reasonable occasion to strive to re-
gain her affections. Being in the wrong, the law demands more
of him than a single sigh of regret or invitation to his home.
And the means of communication, too, under the circumstances;
what were they? They must be noticed. A letter is addressed
to the abused and rejected wife. This method awakens suspi-
cions because of subsequent events. If his feelings were as deep
and genuine as his expressions were pathetic, I cannot but think
he would have made his overtures face to face, that love might
challenge love and drive away distrust.

Again, he could not make his formal offer, and because she re-
fused to comply, place himself in an attitude of antagonism to
her, and yet, at the expiration of three years, claim the benefit
of her rejection. He admits that he assumed this position. He
said that after writing the letter he had as many as twenty-five
interviews with his wife. I think, from the testimony, they
spent a large portion of the time in Lambertville, having a pop-
ulation of about four thousand, where they were near to each
other all the time. He was asked what she said in any of their
interviews about coming back, to which he answered:

"After I wrote that letter to her she wrote me such a letter that I did not
care anything about her coming back."

The letter thus complained of is here given.

"JIM: I have received your note saying you would like to see me. It is use-
less to see you, as it would be unpleasant for us both and do no good, as you

promised the same before and only taunted me with my foolishness in believing you. You say you might have made me a devoted and loving wife; but that time is passed. I have received too much harshness at your hands. It makes my heart ache to see Marian grow up without a mother's care. It would not be so if I could help it. She has a better home than I could give her, as I have to struggle to earn my own living. I shall come to see her as often as I can. I need not ask you to be good to her; I know you are. Jim, I cannot see you, as I think it is best so. Do not think of me as your wife, only as Marian's mother. When the time comes for you to get a divorce, as you will, I suppose, I beg you will not forget I am still Marian's mother. Do not teach her to forget me and call me a bad woman. Please do not write again. Annie."

There seemed to be enough in this letter to chill all his ardent affection for the writer and he says he " didn't care anything about her coming back." As I understand the law, in this he was not justified. He thereby assumes the attitude which he complains the defendant occupies. He not only does that, but boldly declares his assent to the separation. Can the prayer of him who comes into court saying, " my wife and I separated and I afterwards asked her to live with me, but she refused, and then I didn't care to have her live with me," be received with favor? I think not. Divorce for desertion rests on no such ground. Divorces, it may be, are often granted where it only appears that the defendant willfully and obstinately continues the desertion during the statutory period; but never where the petitioner becomes satisfied with that willful obstinacy, and so declares himself in the face of the court. My judgment is that such a petitioner is not within the statute. *1 Bish. M. & D.* ¶ *777; Taylor* v. *Taylor, 1 Stew. Eq. 207; Meldowney* v. *Meldowney, 12 C. E. Gr., 328; 2 Bish. M. & D.* ¶¶ *5, 6.*

The law justly requires much of an offending husband. Had Mr. Grant been as thoroughly in earnest as his words implied, and so continued as he was obliged to, it is more than probable that this litigation would have been avoided; for Mrs. Grant says that she afterwards thought of living with her husband again. In this case, then, the wisdom of the law is both exemplified and justified.

But, if the petitioner had not expressed himself as satisfied

with the separation, his conduct has been such towards another married woman as to render it quite impossible for a court of equity to grant his prayer. This married woman, Mrs. Hany, is living in a state of separation from her husband. For her, the petitioner has bought furniture and clothing, He has paid for her schooling. He presented her with an organ and sewing machine. He paid for instructions given her in music. He rode out with her in a carriage frequently, and at times to distant places, returning in the evening. In addition to this, he admits that he advances to her $10 or $12 in cash per month. He says he has known her about four years, but declines to fix with any certainty when their intimacy began. It must be perceived that this accounts for his saying of his wife, "I did not care anything about her coming back." He had no affection for her; he had given his heart to another. Under such circumstances, I think the petitioner is not entitled to a decree. I will advise that his petition be dismissed, with costs.